IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GRID NETWORKS LLC,<br>   *Plaintiff*,<br><br>  v.<br><br>QUANTUM LEAP RESOURCES LLC, *et al.*,<br>   *Defendants*. | No: 1:22-cv-00805 (MSN/IDD) |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the United States' Motion to Intervene (Dkt. No. 36) and Plaintiff's Motion to Remand (Dkt. No. 12). For the reasons stated below, the Court **GRANTS** the Motion to Intervene (Dkt. No. 36) and **DENIES** the Motion to Remand (Dkt. No. 12).

### I. FACTS & PROCEDURAL HISTORY

On June 21, 2022, Plaintiff GRID Networks LLC ("GRID") filed a complaint in Fairfax County Circuit Court. Briefly summarized, the complaint alleges the following: GRID was founded by defendant James Miller in August 2011. Compl. (Dkt. No. 1-1) ¶ 10. It was subsequently acquired by Peraton in 2018. *Id.* ¶ 15. Defendants Miller, John Yescavage, Bryan McCarthy, and James McPherson were employees of GRID and subject to employment agreements that contained restrictive covenants. *Id.* ¶¶ 12, 14. As part of the acquisition, Miller and Yescavage agreed to restrictive covenants that included non-compete and non-solicitation terms. *Id.* ¶ 18. In January 2019, while still working for GRID, Miller formed defendant Quantum Leap Research ("QLR," collectively with Miller, Yescavage, McCarthy, and McPherson, "Defendants"). *Id.* ¶ 20. In February 2019, Miller left GRID but continued to work as a consultant until March 2020. *Id.* ¶ 21. After Miller's non-solicitation agreement with GRID expired, Miller

hired Yescavage and McPherson to work at QLR. *Id.* ¶ 25. In June 2020, GRID entered into a settlement agreement with QLR, Miller, Yescavage, and McPherson that provided in part: (1) QLR, Miller, Yescavage, and McPherson were prohibited from hiring any GRID contractor, GRID employee, or former GRID employee in the six months preceding that employee's termination, until after April 4, 2022; (2) Yescavage and McPherson agreed to extend their non-competition and non-solicitation restrictions until after November 30, 2021; (3) Yescavage agreed to refrain from soliciting business for QLR from ten enumerated commercial customers and fifteen enumerated government customers; and (4) QLR agreed not to solicit business from those customers until after April 1, 2021. *Id.* ¶¶ 32–33.

GRID alleges that from at least September 2020, Defendants solicited GRID employees, waited six months, then hired the former GRID employees, in violation of their agreements. *Id.* ¶¶ 36–59. GRID also alleges that in early- to mid-2021, QLR instigated and caused GRID independent contractors to terminate their relationships with GRID. *Id.* ¶¶ 60–66. Lastly, GRID alleges that QLR approached a customer attempting to market a service and capability that was nearly identical to GRID's service and capability, in violation of the settlement agreement. *Id.* ¶¶ 77–81.

Based on these alleged events, GRID brings three claims: (1) breach of contract against McCarthy for breaching the non-solicitation provision of his terms of employment; (2) breach of contract against QLR, Miller, Yescavage, and McPherson for breaching the terms of the settlement agreement; and (3) tortious interference with contract against QLR by interfering with McCarthy and Yescavage's obligations to GRID. *Id.* ¶¶ 91–117.

On July 18, 2022, Defendants removed this action from the Fairfax County Circuit Court to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1441. Notice of Removal (Dkt. No. 1) ¶ 3. Defendants argue the claims asserted in the state court action

"arise and relate to classified work performed by GRID and/or QLR for certain United States Government agencies." *Id.* ¶¶ 4–5. Therefore, adjudicating the claims requires resolution of substantial embedded issues of federal law. *Id.*

On July 26, 2022, GRID filed a Motion to Remand. (Dkt. No. 12). On August 1, 2022, the United States filed a notice stating that it needed time to consider whether to assert "the state secrets privilege or other applicable governmental privileges." (Dkt. No. 23) at 1–2. On August 9, 2022, Defendants filed an opposition to the Motion to Remand (Dkt. No. 29), and GRID filed its reply in support of the Motion to Remand on August 12, 2022 (Dkt. No. 31). On August 25, 2022, the United States filed a Statement of Interest of the United States of America advising the Court "that it has an interest in the protection of classified national security information implicated by the claims and allegations in this case," but that the "government has not yet determined whether to intervene in this civil action or invoke the privilege, which is a privilege that belongs solely to the government." (Dkt. No. 32) at 1, 9.

On August 26, 2022, the Court entered an order holding GRID's Motion to Remand in abeyance and directing the United States to file a status report by October 25, 2022. (Dkt. No. 34). The United States filed a timely Status Report (Dkt. No. 35) and a Motion to Intervene (Dkt. No. 36) indicating it had an interest in protecting classified national security information at risk of disclosure, but declining to invoke the state secrets privilege at that time, and opposing remand. GRID filed an opposition to the Motion to Intervene on November 7, 2022 (Dkt. No. 39), and the United States filed a reply (Dkt. No. 40).

The Court held oral argument on the Motion to Remand and the Motion to Intervene on December 2, 2022. (Dkt. No. 41). The Court took the matters under advisement in order to give the United States an opportunity to file an *ex parte*, *in camera* submission with the Court. *See id.* On December 13, 2022, the United States submitted an *ex parte*, *in camera* classified

memorandum for this Court's review and publicly filed a Notice thereof (Dkt. No. 44). On December 16, 2022, the Court found that the United States had provided a specific and detailed submission sufficient to justify a further continuance of the Motion to Remand, and ordered the Motion to Remand and the Motion to Intervene be held in abeyance until March 3, 2023, at which time the United States was to file a submission formally invoking the state secrets privilege or otherwise file a status report indicating the status of that process. (Dkt. No. 46).

On March 3, 2023, the United States formally invoked the state secrets privilege and filed a Motion to Dismiss under Rule 12(b)(6) pursuant to the invocation of that privilege. (Dkt. No. 50). As the United States explained in its supporting memorandum of law, the Director of National Intelligence ("DNI") and Secretary of Defense have each formally invoked the state secrets privilege, and the DNI has invoked related statutory protections in order to protect classified national security information. United States Mem. (Dkt. No. 51) at 1; *see also generally* Decl. of Avril Haines ("Haines Decl.") (Dkt. No. 51-1); Decl. of Lloyd J. Austin III ("Austin Decl.") (Dkt. No. 51-2). Haines and Austin explain in their declarations that the classified information at issue in this case is extremely sensitive and the disclosure of that information could result in serious, and potentially grave, damage to the security of the United States. Haines Decl. ¶¶ 11, 14–5; Austin Decl. ¶¶ 3, 10–11. In accordance with the briefing schedule on the United States' Motion to Dismiss, Defendants have filed a brief in support of that motion (Dkt. No. 57). The briefing on the United States' Motion to Dismiss will be completed by April 28, 2023, and oral argument on the matter is scheduled for May 5, 2023. (Dkt. No. 55).

The Motion to Intervene (Dkt. No. 36) and Motion to Remand (Dkt. No. 12) are fully briefed and ripe for consideration.

## II.   MOTION TO INTERVENE

Under Rule 24(a)(2), intervention shall be permitted when a movant timely requests intervention and demonstrates "'(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)).

Here, the United States has met the requirements of Rule 24(a)(2). The United States has moved to intervene in this action at an early stage in the proceeding. No answers have been filed by Defendants. Nor will any party be prejudiced by permitting the United States to participate in this action at this stage, given that discovery has not commenced and briefing on Defendants' motion to dismiss was stayed pending resolution of the instant motions.

The Court finds that each of the three factors governing Rule 24(a) weighs in favor of intervention. First, the invocation of the state secrets privilege reflects the United States' significant interest in protecting national security and in "withholding national security information from unauthorized persons."[1] *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). The "authority to classify and control access to information bearing on national security" is an aspect of executive power that "flows primarily from th[e] constitutional investment of power in the President." *Id.* The interest of the United States in this action is therefore paramount and weighs heavily in favor of intervention. *Fitzgerald v. Penthouse International*, 776 F.2d 1236, 1237 (4th Cir. 1985). Second, the disclosure of classified information in this litigation threatens that interest, and the United States' interest will be impaired unless it is permitted to intervene. *Fitzgerald*, 776 F.2d at 1243 (discussing risk of indirect disclosure of classified information in discovery where

---

[1] The Court has not yet made any determination as to whether to uphold the United States' assertion of the state secrets privilege. As noted in the above discussion of the action's procedural history, briefing on that matter and the United States' Motion to Dismiss is ongoing. A hearing on the matter is currently set for May 5, 2023.

state secrets are implicated). Third, no existing party could adequately represent the interests of the United States in this litigation. As the United States argues in its motion, each of the existing parties' interests and financial incentives in prosecuting and asserting defenses in this action are completely distinct from the United States' interest in protecting classified information. Moreover, the United States can most effectively prevent the disclosure of classified information. Indeed, neither the parties nor parties' counsel may know what information is classified during witness examination, risking the disclosure of such information in discovery or in open court.

Accordingly, this Court **GRANTS** the Motion to Intervene filed by the United States (Dkt. No. 36).

### III.   MOTION TO REMAND

GRID has moved to remand the case back to the Fairfax County Circuit Court on the grounds that there is no diversity of citizenship, no federal question, and no substantial issue of federal law at issue. "The district courts of the United States are courts of limited subject matter jurisdiction." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). A federal district court only has jurisdiction authorized by the United States Constitution and by federal statute. *Exxon Mobil*, 545 U.S. at 552. Defendants removed this action under 28 U.S.C. § 1331 (Dkt. No. 1 ¶ 3), which provides federal district courts with original jurisdiction over federal questions. Analysis of federal question jurisdiction upon removal is guided by the well-pleaded complaint rule, under which "removal [to federal court] is appropriate if the face of the complaint raises a federal question." *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005). On the face of the complaint, the well-pleaded complaint rule does not appear to be satisfied, as GRID has raised only state law claims. Compl. ¶¶ 91–117 (alleging two counts of breach of contract and one count of tortious interference with contract).

6

Defendants contend that an exception to the well-pleaded complaint rule—embedded federal question jurisdiction—applies here. Under that doctrine, "state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Franchise Tax Bd. of Cal v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)). An embedded federal question exists when a federal question is (1) "necessarily raise[d]," (2) "actually disputed," (3) "substantial," and (4) capable of resolution in federal court "without disturbing any congressionally approved balance of federal and state judicial responsibility." *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Only a "special and small category" of cases falls within embedded federal question jurisdiction. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

This Court finds that an embedded federal question exists here in light of the United States' formal invocation of the state secrets privilege. *See In re Nat'l Sec. Agency Telecommunications Recs. Litig.*, 483 F. Supp. 2d 934, 941–43 (N.D. Cal. 2007) (denying motion to remand case where government's intervention in the action and invocation of the state secrets privilege was likely to occur); *Sakab Saudi Holding Co. v. Aljabri*, No. CV 21-10529-NMG, 2021 WL 8999588, at *5–7 (D. Mass. Oct. 26, 2021) (denying motion to remand where government had moved to intervene and invoked state secrets privilege). First, a federal question will necessarily be raised in this litigation. The United States has formally invoked the state secrets privilege and litigating this action will undoubtedly implicate substantial questions of federal law, including whether the state secrets privilege is needed to protect national security and whether dismissal is the appropriate remedy. *See El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007) (discussing how the state secrets privilege "performs a function of constitutional significance" and that the privilege "has a firm foundation in the Constitution").

Second, the federal question is actually disputed by the parties. Assertion of the privilege may require dismissal of the action, which will likely be disputed by GRID. Moreover, the parties vigorously dispute, in the event the case proceeds to discovery, the scope and application of the privilege. For instance, GRID argues that Defendants can prosecute the case by "us[ing] unclassified code names if they need to discuss matters." Mem. in Supp. Remand (Dkt. No. 13) ¶ 19. Defendants disagree, arguing that GRID "cannot establish its right to relief, and [Defendants] cannot defend [themselves], without establishing the existence of classified contracts, litigating the nature of the classified work they perform, and identifying the customers for whom they work." Defs. Opp. to Mot. to Remand (Dkt. No. 29) at 14.

Third, the federal question is substantial. As discussed above, the state secrets privilege "performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affair responsibilities." *El-Masri*, 479 F.3d at 303. "[R]esolution of the state secrets issue implicates separation of powers concerns important to the federal system as a whole. . . . Any determination of state secrets issues will depend, in part, upon the constitutional issue of the separation of powers." *Sakab*, 2021 WL 8999588, at *6.

Finally, the issue is capable of resolution in federal court without disturbing the balance of federal and state judicial responsibility. The assertion of the state secrets privilege implicates the separation of powers, which is not merely capable of being resolved in federal court but is also most appropriately resolved in a federal forum. *See Sakab*, 2021 WL 8999588, at *6. No federal-state balance will be disrupted by litigating this action in this forum.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Intervene (Dkt. No. 36) and **DENIES** the Motion to Remand (Dkt. No. 12). Accordingly, it is hereby

**ORDERED** that the United States shall be added as a party to this action.

It is **SO ORDERED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

March 31, 2023
Alexandria, Virginia